**In the Matter of INDEPENDENT SALES CORPORATION, fdba Ankeny Paint & Wallpaper; Des Moines Paint & Wallpaper, Debtor.**

**Bankruptcy No. 84–1971–C RE.**

United States Bankruptcy Court, S.D. Iowa,

April 29, 1987.

Rex Darrah, Des Moines, Iowa, for debtor.

## MEMORANDUM OF DECISION AND ORDER

LEE M. JACKWIG, Bankruptcy Judge.

### I. Background

The matters currently before this court for determination stem from an application filed by Norwest Bank Des Moines, National Association (Norwest) on February 24, 1986. Norwest sought to reopen the Chapter 11 case which had been closed by final decree on February 3, 1986 so that the creditor could object to the final accounting by the debtor (which Norwest had not received until February 17, 1986) and could file a motion challenging debtor's pre-filing payment to the debtor's attorney. On February 25, 1986 an order reopening the case was entered. On March 4, 1986 Norwest filed both a formal objection to the debtor's accounting and a motion to examine the payment made to the debtor's attorney. On March 21, 1986 the Honorable Richard Stageman conducted a hearing on these matters. On May 9, 1986 Judge Stageman filed a memorandum of decision wherein he found that Rex Darrah, the debtor's attorney, had not filed an application to serve as attorney for the debtor and, accordingly, no order authorizing such service had been entered pursuant to 11 U.S.C. section 327.

It was noted that the case had been filed on December 20, 1984 and that the debtor's attorney had filed a statement, pursuant to Bankruptcy Rule 2016(b), disclosing that the debtor paid him $10,000, including the $200 filing fee, prior to the commencement of the case.

Citing 11 U.S.C. sections 327, 1101 and 1107(a), Bankruptcy Rule 2014 and the holdings in *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983), *In re Johnson*, 21 B.R. 217 (Bankr.D.D.C.1982) and *Lavender v. Wood*, 785 F.2d 247 (8th Cir.1986), Judge Stageman determined that any attorney who seeks to represent a Chapter 11 debtor (typically, a "debtor in possession" as defined in 11 U.S.C. section 1101) must receive prior court authorization. Therefore, in a case in which such approval has not been timely obtained, denial of compensation is proper unless exceptional circumstances exist. Judge Stageman concluded:

> The present state of the record does not reveal such exceptional circumstances that would warrant an order allowing Mr. Darrah to retain the money he was paid in this case. Nevertheless, the court will give Mr. Darrah the opportunity to prove the existence of such exceptional circumstances. The court will order Mr. Darrah to appear and show cause why he should not be required to disgorge money paid to him by Independent Sales Corporation. Pending the outcome of this show cause hearing, the court will withhold its ruling on Norwest's objection to the Debtor's final accounting.

*In the Matter of Independent Sales Corporation*, No. 84–1971–C, slip opinion at 5 (Bankr.S.D.Iowa May 9, 1986).

On May 20, 1986 Rex Darrah filed a one page motion to employ attorney seeking an order authorizing the debtor to employ him and approving attorney fees in the amount of $9,800. That same day at the time of the hearing on the court's order to show cause, the following exchange between the court and Mr. Darrah took place:

> MR. DARRAH: May it please the Court. I'm going to file a motion, although be-

latedly, to employ attorney. Mr. Vance contacted me regarding filing bankruptcy, and I was retained to represent Independent Sales, and he did pay me $9,800.00 fees and gave me $200.00 for the filing of the petition costs, so basically we're talking about $9,800.00 that was paid in fees. I have a time record which is not—there is more time than this, but according to the Court exceeds a hundred hours—

THE COURT: Well, now, I can't read that. That will have to be typed up, and I would suggest you put in considerable more detail than you have in that.

.    .    .    .    .

THE COURT: Yes, you can have time. What's the status of this case at this time?

MR. DARRAH: The case has been reopened for purposes of hearing this matter and the matter of the payment of some debts which primarily, I think, were taxes.

THE COURT: This was originally a 7 or an 11?

MR. DARRAH: It's an 11. I believe it's still 11. It just went to a liquidation under 11 rather than to—

THE COURT: I see.

MR. DARRAH: Originally it was going to be a reorganization, but some things happened after we got going that the plan had to be redone and submitted as a liquidating plan. I guess we were under the impression that where we disclosed under the petition that fees had been paid that were in this petition, that I received $9,800.00 in fees plus the $200.00 filing paid before we filed, and I perhaps was under a misunderstanding, but I did not think that you needed to have a Court approving—or appointment of an attorney until after the first meeting of creditors. There is a substantial amount of work on my part involved on this before we get to the first meeting. There was no application filed until today. In reading some of the cases, I feel that the Court may if it desires to enter a nunc pro tunc order regarding the ap-

proval of the hiring of attorney and the payment of fees.

THE COURT: Well, I think that what I'm mostly concerned about here, Mr. Darrah, is that you have earned a retainer. That's why I want the detailed accounting of your time and your services. When I say detailed, I mean detailed.

Record at 2–4 (5/20/86).

Norwest filed a resistance to the motion to employ attorney on May 28, 1986. Norwest argued that the services for which the debtor's attorney sought compensation had all been rendered before obtaining court approval. The resistance was heard on June 16, 1986, without the presence of a court reporter. A minute order filed on June 16, 1986 indicates that both Mr. Darrah and Jon Sullivan, counsel for Norwest, were present and reads: "Sullivan's resistance to nunc pro tunc appointment of Darah [sic] as debtor's counsel is taken under advisement. To be decided with matter of Darah's [sic] fees that are also under advisement." On that same date Mr. Darrah filed a statement of time and services rendered, indicating 27 hours of work had been completed prior to and including filing the petition and 114.3 hours had been rendered after December 1984.

On October 30, 1986 Judge Stageman filed a memorandum of disqualification, recusing himself from all further proceedings in this case due to potential conflicts of interest. On November 3, 1986, the undersigned was sworn in as the U.S. Bankruptcy Judge for the Southern District of Iowa. On January 5, 1987 a transcript of the May 20, 1986 hearing was obtained and filed and the motion to examine the payment to debtor's attorney and the motion to employ attorney were considered fully submitted.

## II. Applicable Law and Analysis

■ It is apparent to the undersigned, who has been on the bankruptcy bench for less than six months, that some members of the practicing bankruptcy bar in this district either have misunderstood or have ignored the Bankruptcy Code and Rules with respect to prepetition general retainers. Clearly, a retainer obtained by the

attorney for the debtor prior to filing the petition for relief, as in this case, is held in trust to the extent it is for services to be rendered and for costs to be incurred *during* the pendency of the case and until allowed by the court and ordered paid pursuant to 11 U.S.C. sections 330 and 331, or until the case is closed or until the court otherwise orders. *In re Kinderhaus Corp.*, 58 B.R. 94, 97 (Bankr.D.Minn.1986).

11 U.S.C. section 330(a), which applies to Chapters 7, 11, 12 and 13, discusses the compensation of certain officers:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

With respect to interim compensation, 11 U.S.C. section 331 states:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

Bankruptcy Rule 2016(a) compliments these Code sections by setting forth specific requirements:

(a) *Application for Compensation or Reimbursement.* A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other person for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other person.

Eighth Circuit case law, which governs this District, clearly instructs those who seek *compensation* for representing a Chapter 11 debtor:

An attorney hired to represent a debtor-in-possession must give notice to creditors and receive court approval prior to being compensated by the estate. 11 U.S.C. § 330; Bankruptcy Rule 2016. Without such prior approval, ordinarily subsequent applications for fees should be denied and the funds received should be ordered returned to the estate. However, in limited circumstances, the bankruptcy court as a matter of fundamental

fairness may exercise its discretion and enter a nunc pro tunc order authorizing compensation.

*Lavender v. Wood*, 785 F.2d 247, 248 (8th Cir.1986). The per curiam decision found that the facts supported the bankruptcy court's order directing the law firm which had represented the debtor to reimburse the bankruptcy estate for fees it had received. The opinion noted that the attorney involved had sufficient experience to be aware of the notice and application requirements. It emphasized the lack of activity and progress in the case. *Id.* at 249.

*Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983), a case cited in *Lavender*, sets forth an exhaustive review of whether a nunc pro tunc order of *appointment* is permissible. The actual employment of professional persons is controlled by 11 U.S.C. section 327, which provides in relevant part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Bankruptcy Rule 2014(a) addresses the mechanics for obtaining appointment:

> (a) *Application for and Order of Employment.* An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Both the Code section and Rule apply in a Chapter 11 case pursuant to 11 U.S.C. section 1107(a) which places a debtor in possession in the shoes of a trustee with respect to rights, powers and duties. Neither the statutory provision nor the procedural rule suggest that the application for appointment need not be made until the first meeting of creditors.

The Fifth Circuit determined that a nunc pro tunc order of appointment was not precluded by statute or by rule:

> We thus find that neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order nunc pro tunc authorizing the employment of an attorney for the debtor in possession, even after the attorney (who *should* have secured prior approval for his retainer) has performed valuable services for the debtor's estate that have increased the common funds available for distribution to the creditors.

> In so holding, we decide only the narrow issue that a bankruptcy judge *does* have this discretion, rejecting the present trier's determination that as a matter of law he could never exercise such discretionary power. We do not intend to intimate whether, on remand, he should or should not exercise that discretion. Further, the bankruptcy statute and rules require court approval for employment of an attorney for the debtor's estate and contemplate that such approval will be required in advance of such employment and only after the showing now required by statute.... While equitable powers may permit nunc pro tunc appointment in rare or exceptional circumstances, we do not intend by our holding to encourage any general nonobservance of the contemplated preemployment court approval. We only hold that where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession (many of them as here under the eye of the court itself), the bankruptcy court retains equitable power in the exercise of its sound discre-

tion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors.

*Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 1289 (5th Cir.1983) (emphasis in original).

The difficult determination of what circumstances meet the "extraordinary" category was addressed in *Matter of Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir.1986). The court cautioned against a too lenient approach:

> It does not follow that such retroactive approval should be forthcoming merely because the court would have given approval if timely requested. Such a lenient rule would subvert Congress' purpose in imposing a prior approval requirement. We have previously characterized the requirement of prior approval of employment as a means of ensuring 'that the court may know the type of individual who is engaged in the proceeding, their integrity, their experience in connection with work of this type, as well as their competency concerning the same.' *Hydrocarbon [Chemicals, Inc., In re ]*, 411 F.2d at [203] 205.

It has been suggested that these concerns can be amply attended to by the bankruptcy court's after-the-fact control over compensation, *see In re Bill & Paul's Sporthaus, Inc.,* 31 B.R. 345 (Bankr.W.D.Mich.1983); *In re King Electric Co.,* 19 B.R. 660, 663 (E.D.Va. 1982), and the bankruptcy court's knowledge, through observation, of the attorney's presence and qualifications. *See In re Laurent Watch Co.,* 539 F.2d 1231, 1232 (9th Cir.1976) (per curiam). We reject the notion that a complete and thorough post-application review may substitute for prior approval in most cases. This approach would render meaningless the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* prior approval of employment *and* after the fact approval of compensation. 11 U.S.C. §§ 327(a), 1103(a), 330; Bankruptcy Rules 2014(a), 2016, 2017.

. . . .

We thus hold that *nunc pro tunc* approval should be limited to cases where extraordinary circumstances are present. Otherwise the bankruptcy court may be overly inclined to grant such approval influenced by claims of hardship due to work already performed. In this respect we part company with those courts that have suggested that inadvertence or oversight of counsel may constitute excusable neglect sufficient to relieve the parties of the consequences of their inaction. *See In re King Electric Co., Inc.,* 19 B.R. 660 (E.D.Va.1982); *see also In re Triangle Chemicals, Inc.,* 697 F.2d at 1289. We agree instead with the approach of those courts that limit the grant of retroactive approval to cases where prior approval would have been appropriate and the delay in seeking approval was due to hardship beyond the professional's control. *See In re Brown,* 40 B.R. 728, 731 (Bankr.D.Conn.1984); *In re Seatrain Lines, Inc.,* 15 B.R. 583, 584 (Bankr.S.D.N.Y.1981). While this may seem to be a harsh rule, a more lenient approach would reward laxity by counsel and might encourage circumvention of the statutory requirement.

. . . .

... the bankruptcy court must consider whether the particular circumstances in the case adequately excuse the failure to have sought prior approval. This will require consideration of factors such as whether the applicant or some other person bore repsonsibility [sic] for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

. . . .

In this case, the district court found that 'the equities simply do not fall in appellant's favor.' 55 B.R. at 386. The

court correctly reasoned that retroactive approval should be limited to cases where the hardship is not of counsel's own making. Benenson & Scher is apparently a firm with experienced bankruptcy practitioners who were aware of the need to apply for prior approval. It has alleged no time pressures justifying initiation of its service before obtaining approval; in fact, as Benenson & Scher concedes, the only excuse for its failure to apply for approval was its own oversight. Despite the fact that Benenson & Scher promptly applied for approval on discovering its oversight, and despite its claim that compensation will come from funds set aside for the debtor without harm to the creditors, it did not allege any factors that would justify application of the discretion of the bankruptcy court to grant retroactive approval for their appointment.

. . . .

... In so ruling, we do not suggest that Benenson & Scher acted from any improper motive or that it engaged in any of the practices that concerned Congress. It is simply that the prophylactic statutory rule that approval must be sought in advance of performance of services is too strong to be overcome by a mere showing of oversight.

*Id.* at 648–51 (emphasis in original). Parenthetically, it should be noted that although the Third Circuit concludes that the Fifth Circuit would grant a nunc pro tunc order of appointment based on inadvertence or oversight, the above quoted language from the *Triangle* decision suggests otherwise.

At this juncture, the provisions regarding appointment and regarding compensation for work done during a case must be distinguished from 11 U.S.C. section 329 which provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment.

Bankruptcy Rule 2016(b) expands upon the disclosure requirements for compensation paid or promised to be paid to the attorney for the debtor:

(b) *Disclosure of Compensation Paid or Promised To Attorney for Debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file with the court on or before the first date set for the meeting of creditors, or at another time as the court may direct, the statement required by § 329 of the Code which shall also set forth whether the attorney has shared or agreed to share the compensation with any other person. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required.

See also Bankruptcy Rule 2017 which provides:

(a) *Payment or Transfer to Attorney Before Commencement of Case.* On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for

services rendered or to be rendered is excessive.

(b) *Payment or Transfer to Attorney After Commencement of Case.* On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

Thus, only to the extent a prepetition general retainer is for services performed and costs incurred before the bankruptcy case commenced, there is no requirement of prior appointment pursuant to 11 U.S.C. section 327 nor of approval by the court upon notice and hearing pursuant to 11 U.S.C. sections 330 or 331. *See Kressel v. Kotts,* 34 B.R. 388 (D.Minn.1983), *aff'd in Kotts v. Westphal,* 746 F.2d 1329 (8th Cir. 1984). However, as indicated by 11 U.S.C. Section 329 and Bankruptcy Rule 2017, even the compensation drawn for such prepetition services and costs is subject to court scrutiny. *See In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569 (Bankr.N.D. Tex.1986).

Therefore, with respect to the 114.3 hours claimed by the debtor's attorney for services rendered after the petition was filed, the undersigned must initially determine whether a nunc pro tunc order of appointment pursuant to 11 U.S.C. section 327 is appropriate under the facts presented. That is, whether extraordinary circumstances exist as defined and described in the relevant case law.

▮ According to the May 9, 1986 memorandum of decision in this case, the purpose of the May 20, 1986 hearing was to afford Mr. Darrah an opportunity to prove the existence of exceptional circumstances that would warrant a nunc pro tunc order of appointment. Mr. Darrah's only explanation at the hearing was that he thought it was not necessary to obtain approval of appointment until after the first meeting of creditors since he disclosed the retainer at the time the petition was filed. His motion to employ attorney, filed the day of the hearing, mentions no exceptional circumstances. Even if this court could overlook the fact that it is not dealing with an attorney who failed to file the necessary application for appointment through inexperience but rather with a veteran bankruptcy attorney who should have been fully aware of the 11 U.S.C. section 327 requirement, and, even if this court could overlook the fact that the record indicates that the reorganization effort was flawed from the start, the debtor's attorney's "exceptional circumstance" is without merit. He did not file an application for appointment after the first meeting of creditors on January 17, 1985 nor before the case was closed on February 3, 1986. Rather, he filed such an application only after Judge Stageman rendered his May 9, 1986 decision and scheduled the May 20, 1986 hearing. Accordingly, a nunc pro tunc order is not proper in this case. Having so found, it is not necessary for this court to address whether a nunc pro tunc order granting compensation pursuant to 11 U.S.C. section 330 is appropriate or, in turn, to assess whether the 114.3 hours of compensation sought for postpetition work is otherwise justified and not excessive.

With respect to the 27 hours claimed by the debtor's attorney for services rendered before the petition was filed, the undersigned must now determine the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered and the results obtained. *Levin v. Barker,* 122 F.2d 969, 972 (8th Cir.), *cert. denied,* 315 U.S. 813, 62 S.Ct. 799, 86 L.Ed. 1212 (1941); *see also In re Wendell Grady,* 618 F.2d 19, 20 (8th Cir.1980). At the outset, the undersigned observes that Mr. Darrah's statement of time and services rendered contains an itemization of general services performed between December 4, 1984 and December 20, 1984 which, when added, equal 25.5 hours. However, the summary shows a total of 27 hours. Additionally, the statement lists a 1 hour "[c]on-

ference with Vance and preparation of documents" on December 20, 1984 under "Filing Petition Chapter 11" on the same date. Thus, the last hour seemingly does not qualify for consideration under 11 U.S.C. section 329.

 Turning to the actual 24.5 hours of prepetition services, it is noted that Mr. Darrah's statement generally lacks the specificity required by Bankruptcy Rule 2016 and demanded by Judge Stageman at the time of the May 20, 1986 hearing. *See generally Matter of Pester Corporation, et al.*, 66 B.R. 801 (Bankr.S.D.Iowa, 1986). Except for a two hour meeting with Norwest officers on December 13, 1984, most of the time indicated on the statement was for conferences and phone calls and for preparing the petition and "allied materials". Based on such information and a review of the file, the intricacy of the questions involved and the size of the estate appear to have been typical and average. There has been noticeable opposition from Norwest from the start which, under the circumstances, should have alerted the debtor's attorney to the fact that a successful reorganization was unlikely. Indeed, the final result was a liquidation plan that is yet to be fully resolved with respect to a priority tax claim—a matter a Chapter 7 trustee might have handled more efficiently.

Less than a year ago, Judge Stageman determined that attorney compensation in bankruptcy cases in this district ranged from $65.00 an hour (for routine work or for educating an inexperienced lawyer) to $150 an hour (for high quality expert work in a complex case). *Id.*, 66 B.R. at 809. Given this court's assessment of the work performed before the petition was filed, the requested $100 an hour rate is unreasonable. The debtor's attorney will be allowed 24.5 hours of compensation at the rate of $70 an hour.

### III. Conclusion And Order

WHEREFORE, based on the foregoing analysis, the undersigned hereby finds that no exceptional circumstances justify the appointment of debtor's attorney nunc pro tunc but that debtor's attorney is entitled to receive 24.5 hours of compensation at the rate of $70 an hour for work performed before the case commenced.

THEREFORE, IT IS ORDERED that the debtor's attorney's application for nunc pro tunc appointment is denied.

IT IS FURTHER ORDERED that, pursuant to 11 U.S.C. section 329, debtor's attorney retain $1,715.00 of the $9,800 prepetition general retainer and return the remaining $8,085.00, plus interest from December 20, 1984, to the bankruptcy estate.