**In re C & P AUTO TRANSPORT, INC., Debtor.**

**No. 288-04614-C-11.**

United States Bankruptcy Court, E.D. California.

Dec. 15, 1988.

---

MEMORANDUM DECISION ON MO-
TION FOR RECONSIDERATION
AND CLARIFICATION OF ORDER
APPOINTING ATTORNEY FOR
DEBTOR

CHRISTOPHER M. KLEIN,
Bankruptcy Judge.

The Bankruptcy Code requires the court to approve employment, including terms and conditions, of professionals to represent the estate, and their fees can be paid out of estate funds only upon court order. 11 U.S.C. §§ 327–331. These duties are central to the integrity of the bankruptcy system.

A $5,000.00 "retainer" was paid on the eve of bankruptcy to the counsel who subsequently was appointed to represent the estate. That counsel asks me to reconsider my order that the $5,000.00 be maintained in a trust account with no withdrawals therefrom except upon application pursuant to sections 330 and 331. She argues that this condition was not reasonable, because she interprets section 329 to authorize her to draw against the $5,000.00 without prior court approval of the specific fees.

The order will stand, because it imposes reasonable terms and conditions upon employment of a professional as required by section 328(a) and does not offend the pertinent provisions of the Bankruptcy Code. It will, however, be clarified so that there is no misunderstanding about its meaning.

## FINDINGS OF FACT

1. Counsel was appointed to represent the debtor in possession pursuant to section 327, disclosing that she had been paid $5,000.00, which she described as a "general retainer." She also reported that "[a]ll fees are based on $125.00 per hour plus costs advanced with a minimum retainer of $5,000.00." Disclosure Of Compensation Under 11 U.S.C. § 329 And Bankruptcy Rule 2016(b), July 18, 1988.

2. The debtor elsewhere stated that it, within one year prior to bankruptcy, had consulted the now-counsel "regarding bankruptcy," had paid that counsel a "$5000.00 minimum retainer," and had agreed to pay that counsel "hourly at rate of $125/hr." Statement Of Financial Affairs For Debtor Engaged In Business, Official Bankruptcy Form No. 8, question 20, July 15, 1988.

3. This is a simple reorganization situation in which $5,000.00 might turn out to be more than sufficient for attorney's fees. The debtor's business is transporting automobiles on trucks. The corporation has two shareholders and four operating trucks. Assets are scheduled as worth $113,150.00 against liabilities of $113,961.86 that consist of two secured creditors ($17,150.00), two priority tax creditors ($67,658.75), and ten unsecured creditors ($29,153.11). Voluntary Petition, Official Bankruptcy Form No. 1, Exhibit A, July 15, 1988.

4. In the order appointing counsel, I added language to the form submitted by counsel requiring that the $5,000.00 that was described variously as a "minimum retainer," a "general retainer," and a deposit against future fees be deposited and maintained in an attorney's trust account, and that there be no withdrawals therefrom without a prior fee application pursuant to sections 330 and 331. 11 U.S.C. §§ 330, 331.

5. Counsel engaged another counsel to represent her on the fee question and moved for reconsideration saying that she wanted authorization to:

(1) accept a pre-petition retainer of $5,000.00;

(2) apply against the retainer amount all accrued time charges and reimbursable costs on a monthly basis upon the submission to the client of detailed statements of such time charges and reimbursable costs;

(3) use the retainer as set forth above subject to the review of the bankruptcy court on its own motion or upon motions of any creditor and other party in interest; and

(4) file with the Court, at the expiration of one hundred twenty (120) days after filing the petition, an application pursuant to 11 U.S.C. 331 [*sic*] for confirmation of fees and costs provided by counsel and billed against the retainer and for the allowance of any fees and costs in addition to the retainer amount.

Motion For Reconsideration And Clarification Of Order Regarding Order Appointing Attorney For Debtor at 5 (hereafter "Motion For Reconsideration").

### DISCUSSION

The ultimate issue is whether counsel for the estate employed under section 327 should be allowed to take fees from a pre-petition "retainer" fund as interim compensation without first having complied with the notice and hearing requirements of sections 330 and 331.[1] The court has the

---

**1.** The pertinent portions of those Bankruptcy Code sections are as follows:

§ 327. Employment of professional persons.
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

§ 330. Compensation of officers.
(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and
(2) reimbursement for actual, necessary expenses.

§ 331. Interim compensation.
A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more frequently than once every

discretion to approve, at the time of employment, reasonable terms and conditions of employment. 11 U.S.C. § 328(a).

The issue arises in the context of counsel's argument that section 329 takes precedence over sections 330 and 331; *i.e.* that the court's general power to order refund of excessive compensation from any counsel representing a debtor preempts the requirement that counsel employed to represent the estate be compensated only by way of a court-ordered fee award for actual, necessary services. This, it is argued, makes it reasonable to permit use of the retainer fund before actually being awarded the fees.[2]

In order to assess whether the terms and conditions that I imposed are reasonable, I first consider the nature of the $5,000.00 "general retainer" paid to counsel on the eve of bankruptcy. Then I turn to the statutory compensation scheme. Finally, there is the question of what happens to the money during the pendency of the reorganization.

### 1. *Section 328*

■ The court has the discretion to authorize employment of a professional person on any reasonable terms and conditions, including on a retainer, on an hourly basis, or on a contingent fee basis. 11

U.S.C. § 328(a).[3] My order approving the employment of counsel and requiring that the retainer fund be maintained in trust with no disbursements except upon court order was intended to provide reasonable terms and conditions.

The usual request for authority to employ an attorney that is made in this judicial district, which is routinely approved, does not seek to impose any particular terms and conditions and leaves the question of compensation until later. Although the papers may recite the attorney's usual billing rate, the actual determination of compensation is left to the standards stated in section 330. Thus, the ensuing order does not purport to establish a contractual billing rate and includes language to the effect that compensation is "pursuant to section 330." [4] In this circuit, that means that the lodestar rate applies. *In re Manoa Fin. Co.*, 853 F.2d 687 (9th Cir.1988).

Whenever special terms and conditions are requested, it is important for the court to focus upon them because, once approved, they are difficult to unravel. Changes are permitted only if the terms and conditions originally approved "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). In other

---

120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

**2.** I infer that this is the argument. It is the only logical basis for the motion. Counsel, however, does not mention section 329 in the moving papers.

**3.** § 328. Limitation on compensation of professional persons.

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and condi-

tions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

**4.** The actual language of the order is vital. If the order does not expressly and unambiguously state specific terms and conditions (*e.g.* specific hourly rates or contingency fee arrangements) that are being approved pursuant to the first sentence of section 328(a), then the terms and conditions are merely those that apply in the absence of specific agreement. That leaves the court free to apply lodestar rates unfettered by the strictures of the second sentence of section 328(a) that, as discussed below, otherwise constrains the court's ability to vary the terms and conditions of compensation.

words, once terms and conditions are approved, the professional who has been employed is supposed to be able to rely on them, and the court is expected to abide by them.[5]

 The burden of proof to establish that proposed terms and conditions of employment are reasonable is on the moving party. The court must be persuaded that the terms and conditions are in the interest of the estate. The decision is a matter of discretion and is made against the background of the statutory compensation scheme of sections 330 and 331, which scheme is, as a matter of law, reasonable. Lingering doubts are appropriately resolved by falling back upon those provisions.

A special case arises in the employment of the primary counsel for the trustee in a chapter 11 in which the debtor is performing trustee's duties. Counsel for such a debtor in possession has the best vantage point to assess the dynamic situation and has the advantage in controlling the conduct of the case. Those factors also afford subtle opportunities for unintended mischief, even by honorable counsel. For example, once a chapter 11 case is filed, counsel has little economic incentive to take a sober look at deteriorating prospects for reorganization until the retainer is exhausted. When a close corporation is involved, it may be difficult to distinguish between the interests of the estate (the actual client) and the personal interests of the owner-managers (the apparent client). Such matters make caution especially appropriate when considering departures from usual terms and conditions of employment.

## 2. *The Retainer*

Assessing the reasonableness of the terms and conditions imposed in my order starts with the "retainer" that counsel took without understanding that it was merely an advance payment of fees and without appreciating its implications. This confusion is evident from counsel's various positions. She started with the position that the $5,000.00 was already her property and had been earned upon receipt. She called it a "minimum retainer" in one place and sought formal approval of a "general retainer" in another but now says that her purpose in having the retainer is to have a fund from which she can collect for her services billed on an hourly basis. Finally, she has conceded that the money is not hers until after the services are actually performed.

The term "retainer" has become inherently ambiguous, but historically it was a term of art that referred to a relatively small sum paid for an attorney's agreement to represent the client, with actual services to be paid separately. Modernly, however, it has come to be used loosely in various connotations and to include the compensation paid to an attorney for services. *See* 7 Cal.Jur.3d, *Attorneys at Law*, § 242. Current dictionary definitions recognize the ambiguity: it can be a fee for rendition of professional services when requested, for taking a case, for making oneself available to handle a case, for refusing employment by an adversary, or merely the compensation for services performed in a specific case. Black's Law Dictionary 1183 (5th ed. 1979).[6]

---

5. Appellate courts enforce this standard. *In re Confections by Sandra, Inc.,* 83 B.R. 729 (Bankr. 9th Cir.1987); *In re Benassi,* 72 B.R. 44 (D.Minn. 1987). The requirement of "improvidence in light of developments not capable of being anticipated at the time" makes it difficult, as a practical matter, for a court to vary the compensation even when it thinks that it was improvident at the outset. Whether developments were capable of being anticipated is fertile ground for debate in virtually every case. Moreover, an appeal from a court's determination to change the terms and conditions is likely to be one-sided, with no opposing briefs filed. 83 B.R. at 731.

6. The erosion of retainer as a term of art is evident from a comparison of the Black's fifth edition's generic definition with the definition of "general retainer" that appeared in Black's revised fourth edition:

> General Retainer of an attorney or solicitor merely gives a right to expect professional service when requested, but none which is not requested. It binds the person retained not to take a fee from another against his retainer, but to do nothing except what he is asked to do, and for this he is to be distinctly paid. Black's Law Dictionary 1479 (rev'd 4th ed. 1968).

"Retainer" in the context of the Bankruptcy Act of 1898 came to refer primarily to advance payment of fees to be rendered in the future because interim payments were not generally permitted. *See Arlan's Dep't Stores, Inc.,* 615 F.2d 925, 934–37 (2d Cir.1979). Counsel here uses the term in that context.

The confusion arises when one superimposes on the advance payment meaning of "retainer" concepts of irrevocability that derive from "retainer" as a term of art. Strictly speaking:

A retaining fee is a preliminary fee given to an attorney or counsel to insure and secure his future services, and induce him to act for the client. It is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other and of receiving pay from him; and the payment of such fee, in the absence of an express understanding to the contrary, is neither made nor received in payment of the services contemplated. Its payment has no relation to the obligation of the client to pay his attorney for the services which he has retained him to perform.

7A C.J.S. *Attorney & Client* § 282 (1980); *accord, Baranowski v. State Bar,* 24 Cal. 3d 153, 164 n. 4, 154 Cal.Rptr. 752, 757 n. 4, 593 P.2d 613, 618 n. 4 (Cal.1979); Black's Law Dictionary 1479 (rev'd 4th ed. 1968). Such a retainer is typically modest in relation to the fees for actual services, is earned when paid, and is not refundable.

These features of a classical retainer can lead an attorney into false expectations about an advance payment of fees that counsel denominates as a retainer, especially one that is denominated "nonrefundable" or "minimum" or "earned upon receipt".

■ When a bankruptcy court approves employment under a "general retainer," it is using that term in the sense that the professional will provide services when requested or required, will provide no services that are not requested or required, will not accept a conflicting representation, and will be paid separately for actual, necessary services rendered at lodestar rates

pursuant to sections 330 and 331. Any variations in that meaning must be evident on the face of the order.

### 3. *Relation of Section 329 to Section 330*

■ Although counsel wisely concedes that a nonrefundability provision in a retainer agreement is unenforceable in bankruptcy, she argues that the retainer is reviewable only under section 329, which permits the court to order refunds of excessive charges, and that the retainer fund may be used without the benefit of a prior fee award as required by section 330. Determining the relation between the two Bankruptcy Code sections starts with a review of section 329.

### A. Section 329

■ The substance of an attorney's fee agreement with a potential bankruptcy debtor controls its form. A fee agreement that describes a substantial initial payment as a "nonrefundable retainer" or a "minimum retainer" does not transmute an advance fee payment into a retainer. The Bankruptcy Code governs such agreements when they relate to a bankruptcy case. A putatively nonrefundable retainer is made vulnerable to refund under any of three provisions of the Bankruptcy Code—section 329 review for reasonableness, preference, or fraudulent transfer.

The bankruptcy court may order refund of any payment, including purportedly nonrefundable payments, made to an attorney representing a debtor within one year preceding bankruptcy for services rendered or to be rendered in contemplation of or in connection with the bankruptcy case to the extent that the payment exceeds the reasonable value of such services. 11 U.S.C. § 329(a). The standard for this review is whether compensation exceeds the reasonable value of such services. If the prepetition payments exceed the reasonable value of the services, the court may order refund to the extent of the excessive payment. 11 U.S.C. § 329(b).

Section 329 is derived from section 60d of the Bankruptcy Act of 1898 and is of unquestioned validity. *In re Pacific Far*

*East Line, Inc.*, 644 F.2d 1290 (9th Cir. 1981); *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933); *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). Its function is to counteract the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him from financial reverses. 289 U.S. at 478, 53 S.Ct. at 705; 210 U.S. at 253, 28 S.Ct. at 624. It is founded upon a legitimate balancing of interests:

> When the affairs of one about to be adjudicated a bankrupt are in that situation, then the act, recognizing the right of the bankrupt to legal services to be rendered, undertakes to prevent the diminution of the estate to be administered and distributed for the benefit of creditors beyond a fair provision for counsel under such circumstances. To the extent that the provision is unreasonable the transfer is not given the effect to separate the property from the bankrupt's estate.

210 U.S. at 258, 28 S.Ct. at 626. Both the debtor and the creditors are being protected from the possibility of excessive attorney's fees. *In re Pacific Far East Line, Inc.*, 644 F.2d at 1293.

Thus, section 329 exposes a prepetition retainer in consideration of future services to refund.[7] The reasonable value of the services, of course, cannot be assessed until the services have been rendered. If they are not ultimately rendered, then the retainer exceeds the reasonable value and would have to be refunded.

The $5,000.00 retainer paid to counsel in this case was a payment in consideration of services to be rendered in the future. At the time counsel was appointed, services reasonably worth $5,000.00 had not been rendered. There was no showing that any such services had been rendered. There was, however, a reasonable possibility that such services would be rendered.

█ Section 328 permits the court to approve a retainer for counsel hired under section 327. This, construed in connection with section 329, means that counsel can maintain control of the retainer fund without immediate refund so long as there is a reasonable possibility that payment will ultimately be ordered.[8] Thus, it is not appropriate to determine the question of a refund until the end of the case.

### B. Section 330

Section 330 gives the court greater control over the retainer with respect to postpetition services by a counsel whose employment must be authorized under section 327. All compensation for such persons is governed by section 330. A central tenet of such compensation is that it is to be awarded only after services are rendered. Interim compensation, under the standards of section 330, is permitted upon application and hearing only "for services rendered *before* the date of such an application." 11 U.S.C. § 331 (emphasis supplied).

Sections 330 and 331 apply to a narrower range of counsel and circumstances than section 329. The standards are more precise and more restrictive than the reasonable value standard of section 329. Ordinary principles of statutory construction require that the specific controls the general.

Counsel's primary complaint, untimely payment, is answered by section 331. An application for interim compensation is permitted every 120 days or, if the court permits, more frequently.[9] 11 U.S.C. § 331. An unused retainer is usually an appropri-

---

7. Two other provisions also undermine "nonrefundability" of a payment to an attorney—sections 547 and 548. It is settled in this circuit that a prepetition payment to an attorney on account of an antecedent debt can also be avoided as a preference if it meets the statutory elements for a voidable preference. *In re Pacific Far East Line, Inc.*, 644 F.2d at 1290–94.

 In principle, the identical rationale would apply to make avoidable a prepetition payment that meets the statutory criteria for a fraudulent transfer. A prepayment of fees where services are not ultimately rendered may present such a transfer.

8. And it suggests, as confirmed below, that it is not a futile exercise for counsel to request and receive a reasonable advance deposit for fees.

9. I permit monthly fee applications.

ate source for payment, and fee award orders commonly include language specifically authorizing counsel to take from the retainer fund the sum awarded.[10]

██ Counsel's request to pay herself first and later obtain ratification is fundamentally inconsistent with the statute. Absent an application for compensation and absent express permission from the court to draw upon retainer funds, there is no authority for permitting an attorney who has been employed under section 327 to apply the retainer against accrued time charges unilaterally.

Indeed, such a practice would tend to frustrate the congressional mandate that fees be awarded by the court after withstanding scrutiny from parties in interest. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573–75 (Bankr.N.D.Tex.1986); *In re Colin*, 44 B.R. 709, 712 (Bankr.W.D.Mo. 1984). Attempts to circumvent sections 327, 330, and 331 are disfavored. *Cf. In re Downtown Inv. Club III*, 89 B.R. 59, 63–64 (Bankr. 9th Cir.1988).

The code generally contemplates a hearing in which the parties in interest to the estate, as the parties who are to pay the bill, have an opportunity to scrutinize it and to object before payment is ordered.[11] That process serves a salutary screening purpose that is not well served by the different dynamic that operates when the funds have already been disbursed. Professional fees that are paid from the estate have the potential to be the Achilles heel of bankruptcy and deserve the discipline of

the fee application process. Accordingly, courts should hesitate before permitting departures from this statutory scheme in the name of administrative convenience.[12]

On the record in front of me and considering sections 330 and 331, I am not persuaded that the proposed terms and conditions of employment are reasonable for purposes of section 328(a) in the context of this case.

### 4. How the Retainer is to be Maintained

Counsel's opposition to maintaining the retainer fund in trust serves to confirm my discomfort about the reasonableness of the proposed terms and conditions. Specifically, counsel does not want to keep the fees advanced prepetition in consideration of post-petition services to be rendered by counsel following appointment under section 327 in a trust account pending the court's fee awards under sections 330 and 331. The existing order requires that it be maintained in the attorney's trust account.

██ This requirement of a trust account is appropriate on several grounds that follow from the possibility that the funds will be ordered to be refunded to the estate.[13] The retainer remains property of the estate until the court approves a fee for actual services after they are rendered and orders a payment from the retainer. 11 U.S.C. § 541. The retainer is property in which both the client and the attorney have an interest, which is the proper subject of a trust. The rules of professional conduct

---

**10.** Whether an allowed fee, however, is also ordered paid is within the court's discretion. Sometimes it is inappropriate to permit payment from a retainer. *See In re Kinderhaus Corp.*, 58 B.R. 94, 97 nn. 1 & 2 (Bankr.D.Minn. 1986).

**11.** Counsel's contention that it is sufficient protection to submit the bill to the client betrays a fundamental misconception about the identity of the client. The client is the estate, which is a fiduciary for all creditors and interests; it is not merely the individuals who engaged counsel prebankruptcy. The only way that the bill can be submitted to the true client is by serving a copy on all creditors and parties in interest.

**12.** These considerations surmount the argument recently set forth in S. Bernstein, *Collier Compensation Guide*, ¶ 2.05[4] (1988), in which it is

contended that since nothing in section 329 or Bankruptcy Rules 2016 and 2017 speaks to the question of when the retainer may be applied against accrued time charges, no prospective application for compensation under sections 330 or 331 is needed unless counsel has exhausted the retainer fund. The only case that Bernstein cites squarely rejects the argument.

**13.** I am *not*, however, holding that the mere possibility of a refund under section 329, without more, necessitates a trust for *prepetition* payments from a prepetition retainer on account of *prepetition* services. Since, however, counsel in this matter has failed to make a record that there were any such payments, it is presumed that there were none.

generally require that when both attorney and client have an interest in funds, they be maintained in trust.

■ Under the Bankruptcy Code, the retainer for future services is property of the estate in which counsel also has an interest. 11 U.S.C. § 541; *In re Kinderhaus Corp.*, 58 B.R. 94–99. Counsel concedes in the motion papers that an attempt to make the retainer nonrefundable is "unenforceable" in a bankruptcy case. The discussion above confirms that a putatively nonrefundable or minimum payment is vulnerable to refund or adjustment under various provisions of the Bankruptcy Code, and that such a device cannot be used to circumvent the requirement of a fee application by professionals who are appointed pursuant to 11 U.S.C. § 327 or the reasonable value inquiry under 11 U.S.C. § 329. *Cf., In re Pacific Far East Line, Inc.*, 644 F.2d at 1292–93. These requirements are so substantial that a retainer received in connection with services to a bankruptcy estate or a debtor in possession must be regarded as property of the estate.

Counsel holds its retainer in trust subject to awards of attorney's fees and to the provisions of the Bankruptcy Code:

> A prepetition retainer taken by a debtor's attorney for services to be rendered and costs to be incurred during the pendency of a bankruptcy case is held in trust, except to the extent that attorney's fees are allowed by the Court and ordered paid pursuant to 11 U.S.C. § 330

and § 331, until the case is closed or until the Court orders otherwise. Such a retainer, taken prior to the filing of the petition, becomes property of the estate upon commencement of the case, subject however, to the terms of the trust. *See* 11 U.S.C. § 541(d).

> A prepetition retainer held in trust by a debtor's attorney to compensate for services to be rendered and costs to be incurred during the pendency of the bankruptcy case is not ordinarily available as a source of payment for other administrative expense claims under 11 U.S.C. § 503(b), except to the extent that trust funds might remain after full and final compensation has been allowed....

*In re Kinderhaus Corp.*, 58 B.R. at 97; *accord, In re Independent Sales Corp.*, 73 B.R. 772, 774–75 (Bankr.S.D.Iowa 1987); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. at 574.

The trust status of the bankruptcy retainer is widely understood and accepted. For example, counsel's primary authority cited in the Motion For Reconsideration confirms that a bankruptcy retainer is held in trust. S. Bernstein, *Collier Bankruptcy Compensation Guide*, ¶ 2.03 (1988).[14]

Since the funds are held in trust, it follows that the $5,000.00 must be handled consonant with trust or fiduciary obligations.[15] At a minimum, that includes deposit in a trust-type account with an authorized depository, preferably at interest.[16]

**14.** In advocating that the retainer agreement be in writing, the author recommends:
> the agreement should provide that: (1) the retainer is deemed a trust fund, subject to deposit in the firm's client trust account at a commercial bank and accruing interest at a rate or rates generally applicable to such client trust accounts; (2) any interest accruals on the retainer amount are added to the retainer; ...

S. Bernstein, *Collier Bankruptcy Compensation Guide*, ¶ 2.03 (1988).

**15.** The full amount of the retainer must be held in trust because there was no showing that counsel made any prepetition debits on account of the reasonable value of prepetition services. This makes a difference because prepetition debits against the retainer for prepetition services are not subject to the requirement of fee

award under 11 U.S.C. § 330. *In re Independent Sales Corp.*, 73 B.R. at 779.

Prepetition charges against the retainer are, nevertheless, subject to judicial scrutiny under 11 U.S.C. § 329 and may also be exposed to the trustee's avoiding powers. Thus, in this case, if counsel for the debtor had debited $500.00 prepetition from the $5,000.00 retainer and if such charges reflected the reasonable value of services rendered prepetition (*i.e.* it survives scrutiny under 11 U.S.C. § 329), the retainer that would have to be maintained in trust subject to fee awards would have been $4,500.00.

**16.** Counsel said at oral argument that deposit into the attorney's trust account was objectionable because all interest on attorney's trust accounts must be paid to the State Bar of California under the state's Funds for the Provision of Legal Services to the Indigent Act. Cal.Bus. &

■ This approach is familiar to California lawyers. The manner of holding the retainer is regularly followed by a number of bankruptcy specialists practicing in its judicial district, as evidenced by fee applications that seek permission to draw fees awarded against a retainer held in trust. Although the requirement in this case is a matter of federal law, it squares with Rule 8–101(A)(2), Rules of Professional Conduct of the State Bar of California: [17]

> Rule 8–101. Preserving identity of funds and property of a client
>
> (A) All funds received or held for the benefit of clients by a member of the State Bar or firm of which he is a member, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled "Trust Account," "Client's Funds Account" or words of similar import, maintained in the State of California, or, with written consent of the client, in such other jurisdiction where there is a substantial relationship between his client or his client's business and the other jurisdiction and no funds belonging to the member of the State Bar or firm of which he is a member shall be deposited therein or otherwise commingled therewith except as follows:
>
> . . . . .
>
> (2) Funds belonging in part to a client and in part presently or potentially to the member of the State Bar or firm of which he is a member must be deposited therein and the portion belonging to the member of the State Bar or firm of which he is a member must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed. However, when the right of the member of the State Bar or firm of which he is a member to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is fully resolved.

As a matter of federal law, the interest of an attorney employed under 11 U.S.C. § 327 in the retainer does not become sufficiently fixed to permit withdrawal from the retainer fund until the bankruptcy court makes a fee award *and* authorizes withdrawal. It remains in dispute during the pendency of an appeal by a party in interest to the extent that a reduction is sought.

The safety valve that prevents this procedure from becoming an undue burden or introducing cash flow problems for counsel who can ill afford extending credit is the application for interim compensation under 11 U.S.C. § 331.[18] As suggested above, this court will entertain applications more frequently than every 120 days so that counsel will have a fair opportunity of being paid within a reasonable time.

---

17. The California Supreme Court has left undecided the question of whether an advance fee payment must be held in a trust account insofar as fees are unearned. *Katz v. Workers' Comp. Appeals Bd.*, 30 Cal.3d 353 n. 2, 178 Cal.Rptr. 815 n. 2, 636 P.2d 1153 n. 2 (Cal.1981); *Baranowski v. State Bar*, 24 Cal.3d at 164 n. 4, 154 Cal.Rptr. at 757 n. 4, 593 P.2d at 618 n. 4. Although it would not control this question of federal bankruptcy law, if the question were to be squarely presented to the state supreme court, I predict that it would hold, as a matter of California law, that advance fee payments are subject to trust obligations.

18. Counsel's contention that requiring an application in compliance with sections 330 and 331 "will make it impossible or unlikely that Debtor's [*sic*] will be able to obtain competent counsel in chapter 11 cases in this district," Motion For Reconsideration at 6, is unsupported. Moreover, a number of competent counsel already comply with the procedure.

Prof.Code § 6211 (West 1988). This is incongruous because counsel objects to maintaining funds in any trust account.

Moreover, it is not an accurate statement of California law. The requirement that interest to be paid to the state bar is limited to client funds that are nominal in amount or that are held for a short period of time. Any substantial funds on which appreciable amounts of interest can be earned are permitted to be placed in separate trust accounts or trust investments with interest or dividends payable to clients rather than to the state bar. Cal.Bus. & Prof. Code § 6211(b).

This court routinely requires that certain estate funds be maintained in separate interest-bearing accounts in qualified depositories. *See* Local Rule 33. These are separate trust accounts that comport with section 6211(b). Thus, there is no apparent conflict between the state statute and the federal requirements imposed by this court.

Any such fee awards will, of course, be made in conformance with the statutory provisions governing fees in bankruptcy and the law of the circuit, all of which favor reasonable market-based rates.

These terms and conditions regarding the handling of a retainer fund by counsel for the debtor in possession should *not* be misinterpreted to suggest that I would routinely require counsel to refund a retainer after having performed actual, necessary services of a nature, extent, and value that would consume the retainer fund. Such a concern, which is expressed in the Motion For Reconsideration, is misplaced.

In sum, the basic terms of my order approving the employment of counsel establish reasonable terms and conditions of employment.

A clarifying order will be issued which provides that employment of counsel is approved for purposes of representing the debtor in possession in carrying out the trustee's duties under title 11; that compensation shall be at lodestar rates and awarded pursuant to sections 330 and 331; that pursuant to section 331, monthly fee applications will be permitted; that the $5,000.00 "retainer" received by counsel is deemed an advance deposit on account of anticipated fees for future services; that the retainer be deposited in a separate interest-bearing trust account at an approved depository; and that there be no disbursements from the trust account except upon express order of court.