Irving I. **BASS**, Trustee of the Estate of Continental Escrow Co., a Corporation, Bankrupt, Appellant,

v.

Milo V. **OLSON**, Appellee.

No. 20113.

United States Court of Appeals Ninth Circuit.

June 8, 1967.

Lee J. Cohen, Bernfeld & Cohen, Los Angeles, Cal., for appellant.

Milo V. Olson, in pro. per.

Before BARNES, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This is an appeal by Irving I. Bass, as trustee in bankruptcy of Continental Escrow Company, from an order of the district court declaring Milo V. Olson to be the owner of and entitled to $7895.00 of the moneys presently held in a special trust account.

There is little dispute over the facts. Olson, an attorney, performed legal services for Continental during the period immediately preceding its adjudication on August 27, 1959. Within three months of that date he had received from a third person a check payable to Continental[1] and which, pursuant to an agreement with Continental's President, Alexander T. Chohon, he claimed in payment of his fee.[2] However, Chohon's receiver,

---

1. On January 9, 1959, by order of a California superior court, R. E. Allen was appointed receiver of and for Continental Escrow Company, a California corporation. Since he had in his possession certain moneys in excess of the trust funds which he was appointed to protect, the California court, by order dated May 20, 1959, directed him to pay over to Continental, by check drawn to the order of Continental, the cash in his general fund less certain reserves. On or about May 21, 1959, Olson personally picked up this check which was in the amount of $9329.28.

2. Chohon, as President of Continental, on March 11, 1959 retained Olson to represent Continental in certain legal proceedings. Since Olson feared that Con-

C. Douglas Wikle, also claimed it.[3] Pending determination of the dispute, the check was cashed and the proceeds were deposited in a trust account in the joint names of Wikle as receiver and Olson as trustee.

■ Thereafter, Wikle relinquished his claim, but Bass, the trustee in bankruptcy of Continental, asserted that the moneys belonged to the estate. To settle this new controversy, Olson petitioned the referee in Continental's bankruptcy for an order declaring Bass to have no interest in the moneys and directing their payment to him. Bass in turn filed a similar petition seeking an adjudication in his favor as trustee of Continental.[4]

The referee found against Olson, but he was reversed by the district court on petition for review. It would serve no useful purpose to detail the further course of the case prior to the present appeal. Suffice to say that the case has traveled back and forth between the referee, the district court and this court several times.

On the last occasion, the district court, having concluded in essence that the check constituted payment of money by Continental to Olson, treated the proceeding before it as a petition by the trustee, Bass, under § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d), to reexamine the reasonableness of payments made to Olson, as attorney, for services rendered in contemplation of bankruptcy. It then decreed that Olson was entitled to $7895.-00 (the reasonable value of his services) but the remaining funds on deposit in the special account should be paid over to Bass.

Section 60(d) protects the claim of an attorney, if at all, only when he has actually been paid prior to the adjudication of bankruptcy. Thus, the trial court's order can be sustained only if Olson was actually "paid" by Continental.

■ It is true that Olson had physical possession of the check, and that this possession was with the acquiescence of Chohon. But, under governing California law, mere possession of an uncashed check is not equivalent to payment. For "a check is never a payment of a debt for which it is given until the check itself is paid or otherwise discharged." Utah Construction Co. v. Western Pacific Railway Co., 174 Cal. 156, 166, 162 P. 631 (1916); Mendiondo v. Greitman, 93 Cal. App. 2d 765, 209 P.2d 817 (1949). See also Hale v. Bohannon, 38 Cal.2d 458, 241 P.2d 4, 9 (1952). Similarly a check drawn on certain deposit in a bank "does not operate as an equitable assignment of the deposit or any interest therein or part thereof." Arnold v. San Ramon Valley Bank, 184 Cal. 632, 635, 194 P. 1012,

---

tinental's financial difficulties might prevent him from ever receiving payment, he obtained Chohon's promise that the funds forthcoming from the state receiver would be applied against his requested fee of $15,000.

3. Wikle was the receiver of the then alleged bankrupt estate of Alexander T. Chohon. In this capacity Wikle claimed that he, not Alexander T. Chohon personally, had the right to control the assets of Continental Escrow Company. Accordingly, he asserted that Chohon had no right to make a payment of Continental's money over to Olson. This dispute was complicated by the existence of an order procured by Wikle's predecessor restraining both Chohon and Olson from attempting to exercise control over Continental's assets.

4. Thus, the proceeding was in effect an action to quiet title in a bankruptcy court. This is within the permissible jurisdictional limits of such a court because, when an adverse claimant comes into a bankruptcy court of his own motion asking for a determination of title to property, he waives his right to have his claim tried by plenary suit rather than summary proceedings, and at the same time consents to the entry of an affirmative judgment in favor of the trustee. James Talcott, Inc. v. Glavin, 104 F.2d 851 (3d Cir. 1939), cert. denied, 308 U.S. 598, 60 S.Ct. 130, 84 L. Ed. 501 (1939); In re Petroleum Conversion Corp., 99 F.Supp. 899 (D.Del. 1951), aff'd per curiam, 196 F.2d 728 (3d Cir. 1952), cert. denied, Vaughn v. Petroleum Conversion Corp., 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953); Peters v. Lines, 275 F.2d 919 (9th Cir. 1960).

13 A.L.R. 320 (1921); John M. C. Marble Co. v. Merchants' National Bank, 15 Cal.App. 347, 115 P. 59 (1911); CAL. CIV.CODE § 3265e.[5]

Thus, prior to the actual presentation of the check at the bank, Olson was never "paid." But one might argue that even granting this fact, Olson was at least "paid" when the check was ultimately cashed prior to the adjudication of bankruptcy. However, careful scrutiny of the record discloses that, although the check was in fact cashed, the cashing was done not on behalf of Olson, but rather on behalf of Continental.

As stated earlier, Wikle claimed that, as receiver of the alleged bankrupt estate of Alexander T. Chohon, he was entitled to control the affairs of Continental. Accordingly, to protect his interest, a court order was secured on April 24, 1959, restraining both Olson and Chohon from attempting to exercise control over Continental's assets. As a result, Olson, fearing that any overt actions on his part might put him in violation of the restraining order, was understandably reluctant to cash the check in question (as well as several other checks, all payable to Continental, which he was holding). However, he did want to have the check presented to a bank.

Against this background, Olson, on June 10, 1959, transferred Allen's uncashed check to Wikle with directions to deposit it in a special account. Wikle, pursuant to these directions, opened a joint account with the California Bank in the names of Milo V. Olson, trustee, and C. Douglas Wikle, receiver. From the evidence in the record it is abundantly clear that this money was to be held for the benefit not of Olson, but rather of Continental.

This conclusion is corroborated by several exhibits introduced at the trial. In his letter of June 10 (which because of its importance is reproduced in its entirety in the margin) [6] Olson said, "with-

5. In Dunlap v. Commercial National Bank, 50 Cal.App. 476, 195 P. 688 (1920), the check was held to constitute an equitable assignment of the debt of the bank. But that case depended upon the specific intention of the parties to pass title to the chose in action. Here, Allen, the drawer of the check, testified that "I have no independent recollection of it at all." And there was no other evidence in the record on the subject from which to infer that Allen had the specific intention required.

6. "Dear Mr. Wikle:
 Enclosed are the following:
 1. Check No. 155 of R. E. Allen, Receiver, in the amount of $9,329.98, payable to Continental Escrow Company;
 2. Thirty (30) checks totaling $893.41 also payable to Continental Escrow Co. and received by it for fees and rent;
 3. Forty-nine (49) checks totaling $1,328.41 also payable to Continental Escrow Co.;
 4. Twenty Dollars ($20.00) in cash.
 As you know, I have a pending claim for attorney's fees against Continental Escrow Co. for services rendered in connection with the state court receivership and also in connection with the pending action in the Superior Court against the Farmers & Merchants Bank of Long Beach and others. As of May 13, 1959 I rendered a statement to Continental Escrow Co. in the sum of $6,000.00. I took the time about June 1, 1959 to audit my time records and I find that on a time basis at a rate of $35.00 per hour, as of May 13, 1959 showed the sum of $5,845.00 due. By reason thereof, I think my statement in the sum of $6,000.00 is most reasonable. I am enclosing a copy of this statement. I believe I am entitled to payment of these fees and that I have a claim of lien against the enclosed checks. However, pending the decision of the Referee on the question of who is entitled to control the affairs of Continental Escrow Co. I am depositing the said checks with you for deposit in the special account referred to in your 'Petition of receiver for order ex parte re Continental Escrow Company', withdrawals from said account to be authorized on checks signed for Continental Escrow Co. by C. Douglas Wikle, Receiver and my associate, Frank DeMarco, Jr., attorney in place of Milo V. Olson because I am going to be out of the City commencing June 11th, and I

drawals from said account to be authorized on checks signed *for Continental Escrow Co."* by Wikle and Olson's representative (Emphasis added). The bank account specifically designated Olson as a trustee; this necessarily implies that he held the money not in his own right, but as a fiduciary. Finally, Olson filed a petition in the district court which he himself entitled: "Petition for Fees to be Paid *Out of Continental Escrow Co. Funds."* (Emphasis added). In this petition he referred to the joint account and asked the court to "make an order authorizing C. Douglas Wikle and Milo V. Olson to issue a check *on the funds of Continental Escrow Co.* * * * to Milo V. Olson. * * *" (Emphasis added).

 Thus it appears that the net effect of Olson's activities was to relinquish his individual control of the check and to turn it over to two fiduciaries (one of whom was himself) to be cashed for the benefit of Continental. Since Olson never personally controlled the funds paid out by the drawee, he may not claim that he was ever "paid."

 Nor may Olson argue that when the check was cashed (albeit by Continental) the money belonged to him by reason of a prior assignment from Continental. According to Olson's own testimony, when he was retained on March 11, 1959, "Mr. Chohon stated, 'If I get this money, I will pay you.' * * * [H]e promised that I would be paid from the funds he should obtain from Continental Escrow Company out of the State Court receivership." At most Chohon made a promise to assign in the future; no present assignment was made on March 11.

Neither is there any proof whatever that Chohon actually fulfilled his promise to assign (which it might be noted would have put Chohon in violation of the restraining order).

And so, Milo V. Olson was never in personal possession, either actual or constructive, of funds belonging to Continental. Accordingly, he was never paid. Consequently, his position is no different from that of any other unpaid general creditor of Continental.

The judgment of the district court is reversed and the cause is remanded with directions to deny Olson's "Petition re Fees and Right to Charge a Fund" and to grant Bass' petition to have the funds turned over to him, and for such other orders and proceedings as may be necessary and consistent with this opinion. No costs are allowed.

hereby authorized Mr. DeMarco, Jr. to so do in my place and stead.

It is specifically understood that the delivery of the enclosed checks for this purpose is without prejudice to my claim of lien, and I specifically reserve all rights which I would have had had the checks remained in my possession.

Would you kindly sign the carbon copy of this letter acknowledging receipt of the cash and checks above described.

Very truly yours,
MILO V. OLSON"

(Petitioner's Ex. No. 1)