In re PLAZA HOTEL CORPORATION, a California Corporation, Debtor.

Bankruptcy No. 289–04781–C–11.

United States Bankruptcy Court, E.D. California.

March 12, 1990.

As Corrected March 21, 1990.

H. Lee Horner, Jr., Sacramento, Cal., for debtor.

Patricia S. Mar, Feldman, Waldman & Kline, San Francisco, Cal., for Chapter 11 Trustee.

Cynthia C. Hanson, Office of the U.S. Trustee, Sacramento, Cal., for U.S. Trustee.

### MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR ORDER COMPELLING DISGORGEMENT OF FEES AND FOR DISQUALIFICATION OF DEBTOR'S COUNSEL

CHRISTOPHER M. KLEIN,
Bankruptcy Judge:

The chapter 11 trustee moves to have debtor's counsel disqualified and his retainer disgorged. The United States Trustee supports the motion.

The retainer will be ordered disgorged as a sanction, inter alia, for failing to disclose under Bankruptcy Rule 2014 that the "prepetition retainer" was really a prepetition-postpetition straddle that was designed to be paid postpetition.

Additionally, counsel will be disqualified for conflict of interest, defective disclosure of that conflict, and for not assisting the debtor in performing its duties to cooperate with the chapter 11 trustee and the United States Trustee, compounded by unacceptable gender-biased behavior toward the trustees' female counsel.

### 1. Defective Disclosure under Bankruptcy Rule 2014.

■ The first issue is whether counsel should turn over the retainer that he holds in trust, as a deposit from which future fee awards may be paid, to the trustee.[1] Return of the retainer can be an appropriate sanction for defective disclosure under Bankruptcy Rule 2014.[2]

The law regarding disclosure is familiar. An applicant for employment as a professional must, under penalty of perjury, disclose facts relevant to determining eligibility for employment under 11 U.S.C. § 327. Bankr.R. 2014(a). The burden is on the person making the statement to come forward with facts pertinent to eligibility and to make *full, candid, and complete* disclosure. *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 237 (and cases cited therein) (Bankr.E.D.Cal.1988), *appeal dismissed*, Civ. No. S–88–1162–EJG (E.D.Cal. Sept. 25, 1989). Negligent omissions do not vitiate the failure to disclose. *Id.*

The duty is one of complete disclosure of all facts, and, if the duty is neglected, even innocently, the offender should stand no better than if the duty to disclose had been correctly performed. Literal enforcement of the rule is required to assure its vitality in combating the evils against which it is aimed. *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988 (2nd Cir.1931), *cited with approval, In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302, 1304 (9th Cir.1969).

As one commentator has noted, "[o]ne of the most urgent teachings of the conflict cases in bankruptcy practice is the importance of full disclosure to the court." J. Ayer, *The Responsibilities of the Lawyer in Bankruptcy Practice*, Norton Bankr.L. & Prac.Monograph 1988–1 at 43 (1988).

■ At issue is whether counsel complied with this duty when he said that he received the retainer prepetition without

---

1. Retainers in bankruptcy cases are ordinarily advance payments of fees that are to be held in trust until the court awards a fee and authorizes the fee to be paid from the retainer fund. They are distinguishable from true retainers, which do not constitute compensation for any actual professional services. *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 20 Collier Bankr.Cas.2d 1620, 18 Bankr.Ct. Dec. 989 (Bankr.E.D.Cal. 1988).

2. Once the court has authorized a professional to hold a retainer, disgorgement in advance of

an application for compensation should be reserved for circumstances that present a good reason for such action. One such reason is defective disclosure under Bankruptcy Rule 2014.

The effect of disgorgement as a sanction is that counsel is stripped of the comfort that comes from holding actual funds that might be used to pay a fee award. Thus, counsel is exposed to the same risk of nonpayment (if the reorganization fails) as other administrative claimants.

disclosing that the payment was a prepetition-postpetition straddle that was paid, and was intended to be paid, from postpetition revenues.

### a. Disclosure re Retainer Payment for Representing Debtor in Bankruptcy Case: Prepetition or Postpetition?

Counsel filed two declarations in support of the applications for employment as counsel for the debtor in the bankruptcy case. Each recited that counsel had been paid a $7,500.00 retainer prepetition but did not disclose that the retainer was in the form of checks that he agreed to hold and cash over a period of six weeks after the bankruptcy petition was filed.[3]

Whether the retainer was paid prepetition or postpetition makes a difference, because unauthorized postpetition transfers are vulnerable to attack under 11 U.S.C. § 549.[4]

Counsel's sole explanation and refuge is a Ninth Circuit rule that deems certain transfers by check to be made when the check is delivered. A review of the boundaries of this so-called "transfer-on-delivery" rule demonstrates that the checks in payment of the retainer did not qualify for the benefit of the rule. Further, even if counsel had complied with the strictures of the transfer-on-delivery rule, it does not apply to checks that are outstanding and unpaid when a bankruptcy case is filed.

### (1) Transfer–On–Delivery Rule for Preferences.

For purposes of determining whether there was an avoidable preference under 11 U.S.C. § 547, the transfer-on-delivery rule holds that a transfer by check is made when the check is delivered to the payee, *provided* that the check is honored by the drawee within a "reasonable" time, and *further provided* that the parties intend a cash transaction rather than a credit transaction. *Kupetz v. Elaine Monroe Assoc., Inc. (In re Wolf & Vine)*, 825 F.2d 197, 201 (9th Cir.1987); *Robert K. Morrow, Inc. v. Agri–Beef Co. (In re Kenitra, Inc.)*, 797 F.2d 790, 791 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987); *Engstrom v. Wiley*, 191 F.2d 684, 687–88 (9th Cir.1951). If a check does not qualify under the rule, then the transfer is deemed to have been made when the check is honored, i.e. accepted and paid, by the drawee bank.[5]

---

**3.** The following paragraph is in question:

> I have received a retainer, exclusive of the filing fee, of $7,500.00 prior to the filing of this petition as regards the bankruptcy matter. Said retainer was paid for the purpose of filing this action, reviewing the debtor's financial situation pre-petition, advising the debtor immediately prior to the filing of its various options, and will include representation of the debtor at the initial first meeting of creditors.

Application To Employ Attorney; Declaration Of Proposed Attorney And Order Thereon at 3–4 (lodged July 25, 1989); Declaration Of Proposed Counsel In Support Of Application For Employment Of Attorney (Sept. 14, 1989). (The first application was denied as procedurally deficient.)

The disclosure does not reveal that on July 18, 1989, the day of filing the petition, counsel received six checks, all dated July 18, 1989, totaling $8,000.00 (the $500.00 filing fee and the $7,500.00 retainer). Although the $500.00 check for the filing fee was honored 1 day later, the checks for the $7,500.00 retainer were held and were not honored until 13, 14, 28, 35, and 42 days later. The two checks that were honored more than 30 days after delivery totaled $4,000.00.

**4.** An attorney is free to take a retainer prepetition and has a cognizable interest—it serves as security for payment of eventual fee awards—in the retainer fund, even though the fund must be disclosed and is ordinarily property of the estate which the attorney cannot use without permission from the court. *In re C & P Auto Transport, Inc.*, 94 B.R. at 682.

In contrast, a postpetition retainer is subject to more stringent requirements. An attorney is not free to receive a postpetition retainer payment from property of the estate without prior permission from the court after parties in interest (normally other claimants of administrative expenses) have had an opportunity to object. Postpetition transfers that are either not authorized by specific provisions in the Bankruptcy Code, or not approved by the court, can be avoided under 11 U.S.C. § 549 and recovered under 11 U.S.C. §§ 542, 543, or 550.

**5.** The transfer-on-delivery rule relates to prepetition preferences and has two applications—one controversial, one not. First, a minority of courts, including the Ninth Circuit, apply it under section 547(b) to determine whether a transfer occurred during the prepetition period in which preferential payments can be avoided.

The transfer-on-delivery rule has two key conditions: (1) the check must be honored by the drawee within a reasonable time; and (2) the drawer and payee must have intended that it be a cash transaction. Failure to satisfy either of these conditions means that the transfer will be deemed to have occurred on the day the check is honored by the drawee. *E.g., In re Wolf & Vine*, 825 F.2d at 201–02 (check not honored within reasonable time).

The "reasonable" time in which to have a check honored varies under the transfer-on-delivery rule in the Ninth Circuit, but cannot exceed thirty days:

> Thirty days is the reasonable time to have a check honored for purposes of:
>
> —assessing whether a transfer was made before or during the prepetition preference period. 11 U.S.C. § 547(b).
>
> —eligibility for the exception for a contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1).
>
> —eligibility for the exception for a transfer in the ordinary course of business. 11 U.S.C. § 547(c)(2).
>
> Ten days is the reasonable time for having a check honored for purposes of eligibility for the exception for giving of new value. 11 U.S.C. § 547(c)(4).

*In re Wolf & Vine*, 825 F.2d at 197, construing *In re Kenitra*, 797 F.2d at 790,

*Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982) (Bankruptcy Act), *and McClendon v. Cal–Wood Door (In re Wadsworth Building Components, Inc.)*, 711 F.2d 122 (9th Cir.1983).[6]

As an accommodation to the concern that the transfer-on-delivery rule invites manipulation, the Ninth Circuit has also held that thirty days is the maximum reasonable time for obtaining payment. Thus, any period in excess of thirty days is per se unreasonable. *In re Wolf & Vine*, 825 F.2d at 202.

The ten and thirty-day periods for obtaining payment after a check is delivered are not stormproof safe harbors. Rather, they are periods during which obtaining payment is merely *presumed* reasonable. As with any other evidentiary presumption, it is rebuttable. Fed.R.Evid. 301.[7] In any particular case, a check that is honored within the presumptive period may, nevertheless, not have been honored by the drawee within a reasonable period after delivery. In such event, the transfer occurs when the check is honored rather than at time of delivery.

The second key condition involves intent. One premise of the transfer-on-delivery rule is that the parties regarded the check as the equivalent of cash, *i.e.* they intended a cash transaction and not a credit transac-

---

11 U.S.C. § 547(b). This minority application of the rule immunizes payments by checks that are delivered before the prepetition preference period begins even though the payment out of the debtor's bank account actually occurs within the preference period. Second, a majority of courts apply the transfer-on-delivery rule when interpreting the various exemptions from avoidance conferred by section 547(c). 11 U.S.C. § 547(c).

Thus, the majority version of the check transfer rule is: for purposes determining the existence of a preference per section 547(b), the relevant transfer occurs when the check is honored, but for purposes of applying the exemptions to avoidance per section 547(c), the relevant transfer occurs when the check is delivered. The majority view tolerates two timing rules because the two subsections advance different policy concerns. *See*, Note, *Timing of Payments by Check Under Section 547 of the Bankruptcy Code*, 7 Cardozo L.Rev. 887 (1986); Ferguson, *Does Payment by Check Constitute a*

*Transfer Upon Delivery or Payment?* 64 Am. Bankr.L.J. 93, 94–95 (1990).

The special rule is needed because articles 3 and 4 of the Uniform Commercial Code teach that the mere delivery of a check is *not* sufficient to effect payment. A "check" is a specialized form of "draft" in which the "drawer" (or "maker") instructs a bank ("drawee") to pay a sum certain to a third party. The bank may or may not comply with the instruction. The drawer can stop payment. The check does not of itself operate as an assignment of funds in the drawer's account. The bank is not liable on the check until it accepts it.

6. The different periods are permitted because "Congress did not necessarily contemplate a unitary concept of time of transfer for all parts of section 547." *In re Wolf & Vine*, 825 F.2d at 201; *cf. Newton Exploration Co. v. Fredman (In re Nucorp)*, 92 B.R. 416 (Bankr. 9th Cir.1988).

7. The Federal Rules of Evidence apply in bankruptcy. Fed.R.Evid. 1101(a).

tion. In holding that a particular payment by check was a cash transaction that did not qualify as an avoidable preference, the Ninth Circuit observed:

If it was the intention to extend credit even for a day or to sell the property on credit, there would be no question. A preference would have been established because a debt would have been created. If the acts of either party or the words which they spoke or wrote or the surrounding circumstances show an extension of credit, it would make no difference that both parties may have had an abiding unexpressed intention not to create a debt. This is the usual rule that the evinced intention prevails over mental attitudes.

*Engstrom v. Wiley*, 191 F.2d 684, 687–88 (9th Cir.1951) (footnotes omitted), *see In re Wolf & Vine*, 825 F.2d at 200; *Tarver v. Trois Etoiles, Inc. (In re Trois Etoiles, Inc.)*, 78 B.R. 237 (Bankr. 9th Cir.1987).

In a cash transaction, the drawer and the payee contemplate that the payee is free to present the check to the drawee immediately; so long as it is honored within a reasonable time, the transfer occurs upon delivery of the check. In a credit transaction, the drawer and the payee contemplate that the check will be presented later; the transfer does not occur until the check is honored. In economic form and function, the checks in a credit transaction operate as a form of security for future payment.

#### (2) Accuracy of Disclosure.

Against the background of the terms of the transfer-on-delivery rule, one can test the accuracy of counsel's disclosure in this case, including his assertion that he received the retainer prepetition.

■ For three independent reasons, it is apparent that the payment of the retainer

did not qualify for treatment as a transfer on delivery of the checks. First, the parties did not intend that any of the retainer be paid by way of a cash transaction. Instead, payment of the $7,500.00 was purely pursuant to an extension of credit that is ineligible for treatment as a transfer on delivery. Second, none of the retainer checks were honored within a "reasonable" time, because, under the facts, the "reasonable" time expired the day that the check for the filing fee was honored, i.e. it expired twelve days before the first retainer check was honored. Finally, checks for $4,000.00 of the $7,500.00 retainer were honored more than thirty days after delivery and, under no interpretation of the rule, could have been regarded as transferred on delivery.[8]

In short, counsel's statement in his disclosure was not colorably accurate and was materially defective. Even under his own theory of law taken in the light most favorable to him, i.e. focusing on the purely objective criterion of the thirty-day limit, most of the retainer was paid postpetition. In fact, all of it was paid postpetition.

The disclosure was so materially defective as to warrant the corrective action of an order to disgorge the retainer.[9] That will leave him in the same position as if he complied with his obligation not to accept payment of a postpetition retainer from property of the estate without court approval.

#### b. Disclosure of Retainer Payment for Representing Owners–Guarantors in State Court Litigation: Prepetition or Postpetition?

Counsel also said in each of his two declarations in support of the applications for employment to represent the debtor in the chapter 11 case that he had received a

---

**8.** The second declaration in which counsel asserted that there was a prepetition retainer was executed after all of the checks had been honored and after he knew that more than half the sum was paid by way of checks that were honored more than thirty days after delivery.

**9.** Procedurally, it is imposed on two independent grounds: (1) as a sanction, on motion, for

defective disclosure; and (2) by the court, *sua sponte*, pursuant to Bankruptcy Rule 2017(b) as an excessive payment. The court is not basing this action on the avoidance of an unauthorized postpetition transfer under section 549 followed by recovery from the transferee under section 550. An adversary proceeding would be necessary to accomplish that. Bankr.R. 7001.

retainer of $2,500.00 prepetition from the debtor for representing the debtor's two shareholders ("owners-guarantors").[10] The facts and the analysis are the same as those set forth above except that there is one additional defect in the disclosure: the debtor's $2,500.00 check that was delivered to counsel on the day of filing the bankruptcy case was *postdated.*

The postdated check is powerful evidence of an intention to extend credit rather than to have a cash transaction. It is black letter commercial law that when a check is postdated, the time when it is payable is determined by the stated date. Cal.Com. Code § 3114(2); U.C.C. § 3–114(2). A drawee bank has no right to charge a check against a customer's account until the date appearing on the check. *Siegel v. New England Merchants Nat'l Bank,* 386 Mass. 672, 437 N.E.2d 218, 33 U.C.C.Rep. Serv. 1601 (1982). A postdated check is a credit transaction. *Wilson v. Lewis,* 165 Cal.Rptr. 396, 106 Cal.App.3d 802 (1980) (collecting cases).

There is no theoretical application of the transfer-on-delivery rule that would permit this $2,500.00 payment to be regarded as prepetition.[11] The entire payment was made contrary to law and, accordingly, was excessive.[12] That $2,500.00 will also be ordered to be turned over to the chapter 11 trustee.

**2. Rule on Prepetition–Postpetition Straddles.**

There is another serious flaw in counsel's reliance on the transfer-on-delivery rule that needs to be resolved lest others fall into the same error. The rule does not apply to checks that are outstanding at the time a bankruptcy case is filed and that are honored postpetition.

A different rule governs checks that straddle the filing of the case: the funds that are used to pay a check that is delivered prepetition and honored postpetition can be recovered by the bankruptcy trustee from the payee and, sometimes, from the drawee bank.

The filing of a bankruptcy before a check is honored makes the situation quite different from the transaction in which payment was actually completed prepetition. The check that was honored before bankruptcy has three essential players—the payor (drawer), the drawee, and the payee—and normally is a transaction that is completed without incident before the bankruptcy and that is revisited by a bankruptcy trustee only by virtue of the accident of the subsequent filing of a bankruptcy. In contrast, the check that is honored after the bankruptcy case is filed involves a fourth essential player—the "estate"—and is an incomplete transaction in the vital respect of not having been paid. The "estate" owns the

---

**10.** The following language is in question:

I have also received a retainer of $2,500.00 from the debtor pre-petition for the purpose of defending the majority shareholders of the debtor in a state court action now pending in San Francisco Superior Court ...

Application To Employ Attorney; Declaration Of Proposed Attorney And Order Thereon at 4 (lodged July 25, 1989); Declaration Of Proposed Counsel In Support Of Application For Employment Of Attorney (Sept. 14, 1989).

**11.** Although the trustee has not directly attacked this payment, the court does so *sua sponte* (1) as an additional, appropriate sanction for defective disclosure, and (2) because the payment on this postdated check was from funds of the estate and was made postpetition in a fashion that was not authorized by the Bankruptcy Code or by the court, as an exercise of its power under Bankruptcy Rule 2017(b) to review this postpetition transaction.

**12.** Counsel suggests that this was merely a valid assignment by the owners-guarantors of their right to take a salary from the debtor. That issue, on the facts, was resolved against them at the time a trustee was ordered appointed for cause. One of the factors that the court took into account in finding gross mismanagement under 11 U.S.C. § 1104(a) was the manner in which the owners-guarantors were using the debtor's postpetition revenues to pay their personal bills without court approval.

Moreover, a check is not of itself an assignment of funds in the hands of the drawee bank, and the bank is not liable until it accepts the check. U.C.C. § 3–409(1); Cal.Com.Code § 3409(1); *Bass v. Olson,* 378 F.2d 818, 820–21 (9th Cir.1967) (Bankruptcy Act; California law; collecting cases).

deposit account.[13] Thus, the check that is honored postpetition is paid from an account that no longer belongs to the person who wrote the check.

The rule that the payee and drawee bank can be forced to return the funds that were used after the filing of bankruptcy to pay a prepetition check was in the Bankruptcy Act of 1898 and was approved by the Supreme Court in *Bank of Marin v. England*, with the exception, imposed on equitable grounds, that a bank which lacked actual notice of the bankruptcy would not be liable, and that the recovery in such event could be only from the payee.[14] The Congress, in enacting the 1978 Bankruptcy Code, carried over the substance of the pertinent provision from the former Bankruptcy Act and codified the result from *Bank of Marin*.[15] 11 U.S.C. §§ 542(c) and 549; 4 L. King, *Collier on Bankruptcy* ¶¶ 542.04 and 549.03 (15th ed. 1989).[16]

The actual codification of the rule permitting recovery of postpetition transfers re-

**13.** The "estate" springs into existence at the commencement of a voluntary bankruptcy case and is vested with all of the debtor's property as of the time of the filing. That property necessarily includes all deposits in banks and does not exclude funds on deposit that are needed to pay outstanding checks. 11 U.S.C. § 541.

**14.** *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966) (payee liable but drawee bank without notice not liable), *reversing, Bank of Marin v. England*, 352 F.2d 186 (9th Cir.1965) (payee and drawee bank liable).

In *Bank of Marin*, checks were delivered by the debtor before it filed a voluntary bankruptcy and were presented and honored by the drawee bank six days after the petition, but the day before the drawee bank learned of the bankruptcy. Both the payee and the drawee bank were held to be jointly liable by the bankruptcy referee, the district court, and the Ninth Circuit. The Supreme Court reversed as to the liability of the drawee bank, holding on equitable principles that the drawee bank was not liable because it had no notice or knowledge of the bankruptcy.

The Supreme Court, however, left little doubt that the payee remained liable:

The payee is a creditor of the bankrupt, and to make him reimburse the trustee is only to deprive him of preferential treatment and to restore him to the category of a general creditor. To permit the trustee under these circumstances to obtain recovery only against the party that benefited from the transaction is to do equity.

*Bank of Marin*, 385 U.S. 99 at 103, 87 S.Ct. 274 at 277.

**15.** The basic provision for avoiding the transfer is section 549(a), which provides:

(a) [with exceptions not pertinent here,] the trustee may avoid a transfer of property of the estate—
(1) that occurs after the commencement of the case; and
(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
(B) that is not authorized under this title or by the court.

11 U.S.C. § 542(c) provides, in pertinent part:

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate ... in good faith ... to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

This language encompasses *Bank of Marin*. The legislative history of section 542(c) confirms this was no accident:

This subsection codifies the result of *Bank of Marin v. England*, 385 U.S. 99 [87 S.Ct. 274, 17 L.Ed.2d 197] (1966), but does not go so far as to permit bank setoff in violation of the automatic stay, proposed 11 U.S.C. § 362(a)(7), even if the bank offsetting the debtor's balance has no knowledge of the case.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5870, 6325.

**16.** Procedurally, much of the prepetition-postpetition straddle problem should be forestalled by provisions of the Bankruptcy Rules, local rules, and court orders that are standardly entered at the inception of a case. All three were in play, and were disobeyed, in this case: first, Bankruptcy Rule 2015(a)(4) required the debtor in possession to notify every bank with which the debtor has a deposit of the bankruptcy as soon as possible after the commencement of the case. Such notice deprives the drawee bank of the protection of section 542(c) and takes it out of the fact pattern of *Bank of Marin*. The bank can then safely honor, in the absence of court approval, only checks that may be paid under other Bankruptcy Code provisions. 11 U.S.C. § 549(a).

Second, Local Rule 11 requires each debtor in possession to close the debtor's bank accounts immediately upon filing the petition and to open new accounts. Finally, this court entered an order to the same effect on July 21, 1988.

The failure to obey these requirements affords an additional basis for ordering the return of the retainer.

quires treating several sections as a seamless web. Formally, the liabilities of the payee, the drawee bank that has notice, and the codification of *Bank of Marin*, follow from reading, as an integrated unit, the sections covering the avoiding power for postpetition transfers, the effect of avoidance, and the liabilities of the transferee and the transferor.[17] *Compare* 11 U.S.C. § 549, *with* 11 U.S.C. §§ 542 and 550–51.

The codification of *Bank of Marin* precludes application of the transfer-on-delivery rule to a prepetition-postpetition check straddle. Since that case squarely presented a prepetition-postpetition check straddle, it would be perverse to read out of section 542(c) the fact pattern of the case that the section was written to codify.

Indeed, the Ninth Circuit has never applied the transfer-on-delivery rule to the prepetition-postpetition check straddle. The rationale in its decision in *Bank of Marin* demonstrates that the transfer-on-delivery rule does not apply to such a straddle. In *Bank of Marin*, checks that were delivered prepetition and honored postpetition were avoided as unauthorized postpetition transfers. The Supreme Court disturbed neither the avoidance of the transfer nor the liability of the payee when, resorting to equitable principles, it held that the innocent drawee bank was not liable. No subsequent Ninth Circuit case

has applied the transfer-on-delivery rule to hold that such a straddle is a prepetition transfer.[18]

Thus, even if counsel had complied with the strictures of the transfer-on-delivery rule, it would have been of no avail, because the rule does not apply to checks that are outstanding and unpaid when a bankruptcy is filed.[19]

### 3. Disqualification.

Disqualification of counsel for the debtor is appropriate for two independent reasons: conflict of interest and unwillingness to assist the debtor in performing its duties.

#### a. Conflict of Interest.

■ The facts pertinent to the conflict of interest question are that counsel represents the debtor corporation and simultaneously represents its owners-guarantors in a civil action in state court based, at least in part, upon their guarantees of a loan to the debtor. That state court action antedates the bankruptcy case; the debtor is not a party. The owners-guarantors have made partial waivers of subrogation rights, such that they may not be subrogated until after the creditor in question is paid in full. Counsel revealed neither the guarantees nor the partial waivers of subrogation in his declaration under Bankruptcy Rule 2014.[20]

**17.** The Congress intended such a seamless web. As explained by the legislative leaders in their floor statements:

Protection afforded by section 542(c) applies only to the transferor or payor and not to a transferee or payee receiving a transfer or payment, as the case may be. Such transferee or payee is treated under section 549 and section 550 of title 11.

124 Cong.Rec. H11097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17413 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

**18.** The Ninth Circuit's Bankruptcy Appellate Panel, apparently assuming that it was writing on a clean slate in the circuit and without noting either *Bank of Marin* or section 542(c), applied the transfer-on-delivery rule to postpetition transfers under section 549 in the interest of uniformity. *Tarver v. Trois Etoiles, Inc. (In re Trois Etoiles, Inc.)*, 78 B.R. 237 (Bankr. 9th Cir. 1987). The provisions of sections 542(c) and

549, as well as the Supreme Court and Ninth Circuit decisions in *Bank of Marin*, control and compel a contrary conclusion. *Compare* 4 L. King, *Collier on Bankruptcy*, ¶ 547.16[4] (15th ed. 1989), *with* 4 *id.*, ¶¶ 542.04 and 549.03[1]. As those controlling statutory provisions and precedents were overlooked, this is an exception to the rule that Bankruptcy Appellate Panel decisions bind all bankruptcy courts within the circuit.

**19.** Because the transfer-on-delivery rule is inapplicable, the reimbursement of the $500.00 filing fee also occurred postpetition. It, however, is not being scrutinized further, because the court is satisfied that its corrective action with respect to the retainer will suffice.

**20.** The mere reference to representing the controlling shareholders in a state court action is inadequate to disclose the facts material to a review of whether there is a conflict of interest.

Simultaneous representation of a debtor corporation and the controlling shareholders, although not a disqualifying conflict per se, becomes a basis to disqualify counsel when adverse interests either exist or are likely to develop. 11 U.S.C. § 327(a); *In re B.E.S. Concrete Products, Inc.,* 93 B.R. at 228; *In re McKinney Ranch Assoc.,* 62 B.R. 249 (Bankr.C.D.Cal.1986). At best, counsel is in a delicate posture when representing both a close corporation and its controlling shareholders. J. Ayer, *The Responsibilities of the Lawyer in Bankruptcy Practice* at 28–31.

One operative practical consideration is that the "jaundiced eye and scowling mien of counsel for the debtor should fall upon" potential targets for enhancing the assets of the estate. *In re McKinney Ranch Assoc.,* 62 B.R. at 255. The financial dealings of the owners may be exposed to claims of avoidable preferences or fraudulent transfers. If they have guaranteed corporate debt, prepetition payments on that debt are vulnerable to being treated as avoidable preferences on the theory that the transfers are for the benefit of the insider guarantors.[21] And there is an ever-present possibility of claims for equitable subordination.

An actual conflict generally exists where the owners-guarantors are being sued on their guarantees of the debtor corporation's debt. In such a circumstance, the interests of the owners-guarantors and the interests of the debtor corporation are not identical.[22] The problem for an attorney who represents both a corporation and the individuals who control it is that there is a persistent risk that those in control will instruct counsel in ways that favor their interests, *qua* guarantors, at the expense of their interests, *qua* owners.

Bankruptcy compounds the problem, because a debtor in possession performs the trustee's duties and stands in a fiduciary relationship with creditors. *Fireman's Fund Ins. Co. v. Woodson (In re Woodson),* 839 F.2d 610, 614–15 (9th Cir.1988). An attorney in such a simultaneous representation must remain vigilant to the tension and must take prompt action to eliminate any actual conflict that arises.

In this case, the persons in control of the debtor are defendants in litigation on their guarantees. They face individual liability for the debtor's unpaid obligation.[23] They have a powerful incentive to assure that they pay as little as possible by having the debtor pay as much as possible. This entails a correlative incentive to deprive the debtor of flexibility in formulating a plan of reorganization by introducing a strong bias for a particular treatment of a particular creditor, possibly at the expense of other creditors.[24] Similarly, the debtor's reorganization prospects may be sacrificed by the owners-guarantors due to developments in the state court action.

The conflict is exacerbated in this case by the owners-guarantors' partial waiver of subrogation rights. Although counsel sees the waiver as eliminating a mere theoretical conflict, it actually makes a palpable conflict worse because the owners-guaran-

---

21. 4 L. King, *Collier on Bankruptcy* ¶ 547.04 (1989). *Cf. Smith v. Tostevin,* 247 F. 102 (2d Cir.1917) (L. Hand, J.). Although it is settled that the guarantor is liable as a transferee of a preference, there is a raging dispute about whether the guaranteed party is also liable to the same extent and for the same period of prepetition exposure. *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.),* 874 F.2d 1186 (7th Cir.1989); *see, e.g.* Katzen, *Deprizio and Bankruptcy Code Section 550: Extended Preference Exposure Via Insider Guarantees, and Other Perils of Initial Transferee Liability,* 45 Business Lawyer 511 (1990).

22. This conclusion pertains regardless of whether the guarantors waive rights of subrogation or reimbursement.

23. As noted above, they may also be exposed to liability for prepetition preferences potentially resulting from prepetition payments on the guaranteed debt.

24. The process of devising a confirmable plan of reorganization usually necessitates negotiation among parties in interest. The give-and-take that inheres in negotiation could be affected by the dual representation. Trade-offs by the debtor could be skewed in favor of protecting the owners-guarantors from enforcement of the guarantees. These issues are both subtle and insidious.

tors face a greater chance of being made to pay without being reimbursed. That is a classic conflict of interest.[25] *Hunter Savings Ass'n v. Baggott Law Offices Co. (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536 (6th Cir.1984).

The conflict is so powerful that it is unlikely that an attorney could be counted upon to fulfill the attorney's duty of loyalty to the debtor corporation and to the owners-guarantors.

"Consent" by the owners-guarantors on behalf of themselves and on behalf of the corporation is not effective in bankruptcy to permit dual representation. Such consent is an intramural agreement that is not obtained at arm's length; it is the product of the same person changing hats. A better argument for consent can be made when the issue has been aired, by way of full, candid, and complete disclosure, to all parties in interest and has failed to attract opposition. In this instance, the trustee's objection vitiates any consent.[26]

"Consent" also entails approval by the bankruptcy court, which becomes involved in the consent process by way of the statutory duty to approve employment of professionals at the inception of their employment. 11 U.S.C. § 327.

In addition, and conceptually distinct, the court's continuing supervisory role during the case includes the ability to revisit such issues as conflicts whenever appropriate. *See* Ayer, *The Responsibilities of the Lawyer in Bankruptcy Practice* at 31. Effective performance of the court's supervisory

duty requires that there first have been appropriate disclosure, that the court lend an attentive ear to objections that arise, and that the court be prepared to revoke its approval if circumstances so dictate.

In this particular instance, the chapter 11 trustee has objected and has exposed inescapable conflicts of interest that existed during the period that counsel represented the debtor as debtor in possession. The conflicts were not correctly disclosed in connection with the application for employment.[27] The debtor entertains hopes of being restored to possession. There was not effective "consent" to the conflict. Disqualification is appropriate.

b. *Unwillingness to Assist Debtor in Performing Its Duties.*

█ Another factor that bears on the question of disqualification is counsel's unwillingness to assist the debtor in performing its duty to cooperate with the trustee and with the United States Trustee. 11 U.S.C. § 521(3); Bankr.R. X–1007(b). This unwillingness is manifested by the unduly adversarial posture that the debtor has adopted toward the chapter 11 trustee; for example, much of counsel's declaration in opposition to the instant motion amounts to an attack upon the competence of the trustee to manage the hotel.[28]

A second manifestation of that unwillingness, and of greater concern to the court, is the gender bias that counsel has exhibited toward the women who represent the chap-

---

**25.** It has been suggested that waivers of subrogation or reimbursement may become more common as lenders seek to escape the risks of exposure to liability for preferences portended by *Deprizio*. Katzen, *supra* n. 21 at 529–31.

**26.** The fact that the debtor is no longer a debtor in possession arguably restores the "consent" as between the owner-guarantors and the debtor not in possession. That, however, does not solve the conflict problem as it relates to the period that the debtor was in possession. Moreover, so long as the debtor remains in bankruptcy it has continuing obligations, *see* 11 U.S.C. § 521, that are impaired by the conflict. And, the attacks by the debtor on the competence of the trustee indicate that the debtor plans to ask to be restored to possession pursuant to 11 U.S.C. § 1105.

**27.** Professor Ayer gives good advice:

There is an obvious moral here. That is: if you think you have a conflict, surface it at the beginning of the case and let the judge decide. If the court refuses to approve it, counsel may lose a profitable opportunity, but at least he will not work for nothing, or risk a liability judgment.

J. Ayer, *The Responsibilities of the Lawyer in Bankruptcy Practice* at 44.

**28.** This is not to say that a debtor cannot disagree with a trustee and bring disputes before the court. Such disagreements, however, must be balanced against the duty to cooperate. It is a matter of degree. In this instance, it is out of balance.

ter 11 trustee and the United States Trustee in this court.

Counsel, in the course of this proceeding and in writing, referred to the woman who represents the United States Trustee as "office help" even though he knew that she was a lawyer and knew that she had presided over the section 341 meeting. He refused to respond to her written request for fuller disclosure of his apparent conflict of interest, which she had signed as designee of the United States Trustee.[29] He reasoned that he need not respond because "she decided that she knew more than the court" and that her job title was not sufficiently exalted.[30]

The condescending attitude towards the United States Trustee's lawyer that counsel evinced during the hearing gave gender-biased content and context to those remarks. They would not have been made but for the fact that the lawyer in question is female.

Gender-biased remarks are unworthy of counsel who appear in federal court, interfere with the orderly conduct of federal litigation in an atmosphere of equal justice, and are as sanctionable as the casting of racial or ethnic epithets and slurs among counsel. They merit, at a minimum, rebuke. In this instance, they are indicative of debtor's counsel's unwillingness to assist the debtor in discharging its duties to cooperate with the chapter 11 trustee and the United States Trustee.

This court is greatly disappointed that a lawyer would think that it would brook such remarks and arguments sounding in gender bias. All counsel appearing in this court need to understand that such offensive remarks will be dealt with forcefully—he will be disqualified from representing the debtor.

## CONCLUSION

Counsel for the debtor will be ordered to disgorge his retainers for the following in-

dependent reasons: (1) as a sanction for defective disclosure under Bankruptcy Rule 2014; (2) as a sanction for failing to comply with the Bankruptcy Rules, the local rules, and the order of this court regarding new bank accounts at the beginning of the chapter 11 case; and (3) as "excessive" payments pursuant to Bankruptcy Rule 2017(b).

Counsel will be disqualified from representing the debtor for the following independent reasons: (1) actual conflict of interest; (2) defective disclosure of facts pertinent to the conflict of interest; and (3) unwillingness to assist the debtor in performing its obligations under the Bankruptcy Code.

Findings of fact and conclusions of law will be entered separately. An appropriate order will issue.

---

29. A designee of the United States Trustee acts on behalf of the United States Trustee. 11 U.S.C. § 102(9).

30. A letter on the stationery of the United States Trustee that has a signature line that includes both the name of the United States Trustee and of the designee signing on behalf of the United States Trustee is an official communication from the United States Trustee.